```
            UNITED STATES DISTRICT COURT
            EASTERN DISTRICT OF NEW YORK

--------------------------------X   Docket#
UNITED STATES OF AMERICA,       :   12-cr-00134-ERK-MDG
                                :
    - versus -                  :   U.S. Courthouse
                                :   Brooklyn, New York
ADNAN IBRAHIM HARUN A HAUSA,    :
also known as "Spin Ghul",      :
also known as "Esbin Gol",      :
also known as "Isbungoul",      :
also known as "Abu Tamim",      :
also known as "Joseph Johnson",:    May 3, 2013
also known as                   :
"Mortala Mohamed Adam",         :
           Defendant            :
--------------------------------X

       TRANSCRIPT OF CRIMINAL CAUSE FOR CONFERENCE
          BEFORE THE HONORABLE EDWARD R. KORMAN
             UNITED STATES MAGISTRATE JUDGE
```

**A  P  P  E  A  R  A  N  C  E  S:**

**For the Government**:        **Loretta E. Lynch, Esq.**
                                United States Attorney

                          BY:  **Shreve Ariail, Esq.**
                                **David Bitkower, Esq.**
                                **Amanda Hector, Esq.**
                                Assistant U.S. Attorney
                                271 Cadman Plaza East
                                Brooklyn, New York  11201


**For the Defendant**:          **Susan G. Kellman, Esq.**
                                25 Eighth Avenue
                                Brooklyn, NY 11217



**Transcription Service**:      Transcriptions Plus II, Inc.
                                740 Sharon Road
                                Copiague, New York 11726
                                <u>Transcriptions2@verizon.net</u>

Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

                                                                    2
                         Proceedings
1               THE CLERK:  United States v. Ibrahim Harun.
2               Your appearances, counsel.
3               MR. ARIAIL:  Good afternoon, your Honor.
4               Shreve Ariail, Dave Bitkower and Amanda Hector
5    for the United States.
6               MS. KELLMAN:  Good afternoon, your Honor.
7               Susan Kellman for Mr. Harun.
8               THE CLERK:  The Housa interpreter is --
9               THE DEFENDANT:  Excuse me.  She no
10   (indiscernible).  I understand.
11              THE CLERK:  May I proceed?
12              THE DEFENDANT:  I understand.
13              THE CLERK:  May I proceed?  Why do we have an
14   interpreter here if he speaks English?
15   (INTERPRETER SWORN)
16              THE CLERK:  Please state your name for the
17   record.
18              THE INTERPRETER:  Mohammed Albakaye.
19              MR. ARIAIL:  Your Honor, just to give you a
20   status in terms of where we are --
21              THE COURT:  Talk slow, there's an interpreter.
22              THE CLERK:  Pardon me?
23              THE COURT:  Is the interpreter doing a
24   simultaneous translation or is he just helping him?
25              MR. ARIAIL:  He should be doing a simultaneous

                                                                   3
                            Proceedings

1  translation.
2           THE COURT:  Well then you have to speak slowly.
3  Yes?
4           THE DEFENDANT:  What I want to say is when I
5  first arrived here, the first judge was a female.  She
6  asked me if I was brought here against my will.  I said
7  no.  I want you all to know that I've never been -- I've
8  never entered the United States before.  I don't know
9  your court system.  The Nigerian embassy did not come to
10 explain to me -- Niger --
11          THE INTERPRETER:  Niger, sorry.
12          THE DEFENDANT:  -- the Niger embassy did not
13 come and tell me what's right and what's wrong to explain
14 the system to me.  You gave me an attorney for five
15 months -- for this five months.  In these last five
16 months, we had a few problems.  That's why I said give me
17 to a -- hand me over to a military court, so I would know
18 what is going to happen to me, even if it -- even if I
19 die, like Osama Bin Laden -- we're sitting here in your
20 court.  This is what happened to me in the Italian court.
21 This happened to me for -- this lasted for a year there
22 in Italy and I wasted a lot of time and nothing happened.
23
24          When I was brought to the Court to be judge, I
25 don't know your system.  That's all I wanted to say.

                                                                    4
                              Proceedings

1            THE COURT:  Well if you went to a military
2    court, you wouldn't know the system either.
3            THE DEFENDANT:  That's true.  All I know is I
4    know one thing --
5            THE CLERK:  Mr. Harun, you can be seated when
6    you speak.
7            THE COURT:  No, no, let him stand up if he
8    wants to; whatever he wants.
9            THE DEFENDANT:  When I first arrived here, your
10   reporter said she represented a military court and
11   everything that I tell her, she will report to a military
12   court.  All I know, even if I don't understand what
13   happens in a military court, I know that there is
14   something that I have done against them because I did
15   fight against their forces.
16           In all the cases of individuals who are found
17   fighting, they were being -- they're being handled by
18   military courts and that military courts, even the
19   individuals who are in Guantanamo are being -- were found
20   and are being held there.
21           Even my passport, even up to now, nobody knows
22   where my passport is; the passport I entered Libya with
23   and I should be -- nobody knows where it is and I would
24   like to be sent to -- or if it can't be found, I should
25   be sent to an international court.

Proceedings

5

1    So, I am not refusing justice against me but I
2  just want everybody to have -- everyone to have their
3  rights.  And, for example, if you yourself were sent to a
4  military court in Niger and you didn't know the laws, you
5  also wouldn't agree with the proceedings.
6            THE COURT:  Well, the problem is this.  I don't
7  have the power to decide whether you get tried in a
8  military court.  It's up to the -- what we call the
9  executive branch of our government which is headed by the
10 -- the executive branch is headed by the President of the
11 United States and I have no power to decide that you
12 should go to a military court.
13           And I certainly have no power to send you to --
14 you know, to a world court, assuming there is such a
15 place that you could even be tried.  So, what you're
16 asking me for, I can't do.  So, the thing to do is to
17 make the best of the situation that you're in.
18           And I've appointed you -- this lawyer happens
19 to be an excellent lawyer.  She's one of the best lawyers
20 who practice in front of me and I appoint her in some of
21 the most difficult cases just for that reason.  And
22 precisely because you're in a situation -- you're a
23 stranger in a strange country and a strange system, you
24 need somebody who is extremely competent and familiar
25 with the process to try and help you.

Proceedings

6

1  This is a nice courtroom.  It's a beautiful
2 building but the jails that you could go to if you're
3 convicted and for a long, long time, are not very nice
4 places.  And so the best thing for you to do is to take
5 advantage of an excellent lawyer who is obligated
6 ethically and legally to provide you with the most
7 zealous defense and try and cooperate with her, so that
8 whatever happens to you happens for the best.
9  And I should say you're not the only one --
10 you're not the only defendant who comes in here who is
11 from a foreign country who doesn't understand the process
12 and who we try and treat fairly because that's basically
13 how we do things.
14  Yes, speak whenever you want.
15  THE DEFENDANT:  The truth is, if this is how
16 things are going to go, I will close -- I will shut my
17 mouth and you can do whatever you want.
18  THE COURT:  Well, I don't want you to shut your
19 mouth but the thing is, you have to understand is that
20 it's better before you talk to me or to anybody else, to
21 talk to your lawyer first and tell her what you're going
22 to say because the government is going to sit there and
23 you might say something that might not be helpful to you.
24 They're going to write it down and they're going to -- if
25 we ever go to a trial, there will be a jury and they'll

Proceedings

1  say look what he said.  So, be careful in terms of --
2  nothing that you said today is going to cause any
3  problems but normally it's better to -- before you say
4  something, to either ask your lawyer to say it or to ask
5  her whether what you say is going to cause you problems
6  in the future.
7         And I am going to tell you one more thing, you
8  see, I'm here -- I'm part of the judicial branch of the
9  government of the United States.  It's true that I work
10 for the government in the sense that they send me a
11 paycheck but in order to allow me to be independent, and
12 to protect the rights of the people who appear before me,
13 first I have life tenure.  The President of the United
14 States can't call me up and tell me I'm fired.  In fact,
15 a couple of weeks ago I wrote an opinion that was very
16 critical of the President and do you know what he said?
17 He said I'm going to take an appeal, that's all, to three
18 other judges who also have life tenure.
19        And the other thing is that they also --
20 there's a provision in our Constitution -- this was all
21 written 200 years ago -- to protect judges, that says
22 that my salary can't be reduced just because the other
23 branches of the government don't like what I do.
24        So, I am basically here -- my interest is to
25 give you a fair trial and to treat you fairly and

                                                                  8
                            Proceedings

1  humanly.  And the first step of that process was to find
2  you a really good lawyer and I think I've done that.  And
3  she has done -- I mean, she's taken cases that are
4  hopeless and has almost gotten people off.  You'll see if
5  it comes to it what an effective lawyer she is.
6           And if you want to communicate with me, you
7  could write me a letter, it can be a private letter if
8  you want, if something is bothering you.
9           THE DEFENDANT:  I have something to say.  It's
10 possible that you're forgetting something.  I am a
11 warrior and the war is not over.  The truth, yes, I was
12 brought to America.  Our terrorism is not over.  All the
13 time I spent in Italy, I was there with no problems and I
14 never caused any problems there and since I arrived here,
15 I haven't caused any problems not because the war is
16 over.
17          And the CIA came and worked on me in Libya.  I
18 don't know if you are aware of that or not.
19          THE COURT:  I'm not aware of it.
20          THE DEFENDANT:  They came and they took my
21 Koran from Afghanistan and that Koran is in the hands of
22 the FBI.  They collected it from me at the airport in
23 Italy before I came to America saying that they will
24 return it to me but when we arrived here, they said they
25 would not return it to me.  They won't give it to me at

Proceedings

9

1  the MCC.  That Koran was found at the location where I
2  fought with the American -- where we fought with the
3  American soldiers.  That's where it was found and that's
4  where -- that's how it arrived to me in Libya and the FBI
5  collected it before I arrived in New York.
6           That's why I want to remind you I am still in
7  battle.  The way in which I am being judged I have not
8  completely accepted yet.  I don't understand everything
9  that's happening completely and you're a judge, but even
10 though you're a judge, the country is at war with us.
11 That is a fact.  Don't forget that.  That can prevent me
12 from agreeing with a lot of things.
13          THE COURT:  Well, I am not asking you to agree
14 with anything.  The fact that we're at war, we're at war.
15 I'm trying to get you -- the only thing I'm trying to get
16 you to agree to is to do things that will be helpful to
17 yourself.  I'm not trying to get you to do anything else.
18 And if you would like -- and do you have a copy of the
19 Koran in the MCC?
20          THE DEFENDANT:  Yes, I have one but my -- the
21 Koran I had was a special Koran.  It has a translation --
22 the Arabic translation.  So, it's a -- footnotes, like a
23 footnotes on the Koran.
24          MS. KELLMAN:  It has like a commentary or
25 something, your Honor --

10
Proceedings

1 THE DEFENDANT: Yeah, commentary; right.
2 MS. KELLMAN: -- like the Talmud.
3 THE DEFENDANT: Yeah.
4 MR. ARIAIL: Your Honor, in terms of the Koran,
5 we're working with defense counsel to see if we can get a
6 Koran that is to his liking available for him at the MDC.
7 THE COURT: Okay.
8 MR. ARIAIL: But he has a Koran at the MDC
9 right now.
10 THE COURT: No, he wants one with commentaries.
11 I like my own Bible with commentaries myself.
12 THE DEFENDANT: They gave me a Koran and --
13 they gave me at the Koran at the MCC but I trust my Koran
14 with -- I trust my Koran more.
15 THE COURT: Well, you know, I don't know, they
16 may want to keep it because they think it constitutes
17 some sort of evidence but I'll try -- we're going to try
18 and get you a Koran with the features that you described
19 with the commentary in Arabic.
20 THE DEFENDANT: But the CIA gave it to me.
21 They gave me a Koran and -- they gave me a Koran that's
22 Arabic and English. Yes, you don't understand me. The
23 Koran that they -- there are different Korans.
24 THE COURT: No, I understand that. There's --
25 the same thing is true with the Bible. Look, find out

```
                                                              11
                          Proceedings
 1   where the CIA got this book and give it to him.  Get
 2   another copy.
 3             MR. ARIAIL:  Your Honor, that's what we're
 4   working to do, is to get him a copy.
 5             THE COURT:  Okay.
 6             THE DEFENDANT:  Yes, that's what -- now as far
 7   as judging me, I have decided to shut my mouth and even
 8   if I were to be killed and judged, I don't care.
 9             THE COURT:  Well, okay.  So, you were about to
10   say when we were started?
11             MR. ARIAIL:  When I started, your Honor, we
12   we've been discussing with counsel --
13             THE COURT:  He's got to -- talk slower because
14   he's got to do a simultaneous translation.
15             MR. ARIAIL:  We have been discussing with
16   counsel a way forward in the case and we have obviously
17   been providing counsel with discovery over the last bit
18   of time.  I think there is an application that your Honor
19   may have a copy of that I think we should address as well
20   today.
21             THE COURT:  Okay.  I understand that you want
22   the indictment changed, so that it reflects your true
23   name which is Adnan Ibrahim Harun Adam Saleh Hausa.  And
24   I'm going to assign an order directing that the caption
25   of the indictment be amended to reflect that.
```

```
                                                              12
                          Proceedings
1              THE DEFENDANT:  But as I've said, to continue
2   the justice with judging me, I've stopped.
3              THE COURT:  Do you want it changed or not?
4              THE DEFENDANT:  Yes, of course, of course.
5              THE COURT:  Okay.  So, I'm --
6              THE DEFENDANT:  I wanted that changed.
7              THE COURT:  I am going to sign the paper making
8   the change.  Give me a pen.
9              MR. ARIAIL:  Your Honor, I think that the way
10  that we had set up the application, the defendant would
11  have to actually sign an application.
12             THE DEFENDANT:  I am not going to sign
13  anything.
14             THE COURT:  You don't have to sign it.  He
15  misspoke.
16             THE DEFENDANT:  I don't mind if I am killed.  I
17  prefer that.
18             THE COURT:  Well, I --
19             THE DEFENDANT:  It's best if I die.  If I --
20  it's best if I die to join the relatives who passed.
21             THE COURT:  Well, just like I don't have any
22  power to send you to a military court, I have no power to
23  grant your wish to die.
24             THE DEFENDANT:  Okay.
25             THE COURT:  Okay.
```

```
                                                             13
                         Proceedings
 1            THE DEFENDANT:  You can do whatever you want.
 2            THE COURT:  Okay.  So what's next?
 3            THE DEFENDANT:  I don't mind.
 4            THE COURT:  Now we've taken care of this issue.
 5            THE DEFENDANT:  God is the only judge.
 6            MR. ARIAIL:  Your Honor, I guess you know,
 7   we've been working with counsel and the defendant to see
 8   if can work through some of these issues in terms of
 9   their relationship.  And I can --
10            THE COURT:  I think we may have solved that
11   problem for the moment.  What else are we here for?
12            MR. ARIAIL:  I think other than excluding time
13   and setting a date for another status conference, that's
14   all we have.  Obviously we're going to continue providing
15   discovery to defense and moving forward with the case in
16   the meantime but I think we've requested a status
17   conference probably sixty days out.  And that time be
18   excluded given the nature and complexity of the case and
19   to hopefully resolve the dispute between the defendant
20   and his attorney.
21            THE COURT:  Now when the government says
22   they're giving discovery, what that means is they're
23   giving information to your lawyer about the nature of
24   their case, so she could examine all that and it will
25   help her to defend you if the case goes to trial.
```

```
                                                                  14
                            Proceedings
1            So here in this country, there are certain
2   obligations that a prosecutor has to turn over evidence
3   and she will then in turn go over with you the evidence
4   that's been turned over to her.  So you'll have an idea
5   of what the case is about, so when the government lawyer
6   says discovery, I just want you to -- I don't know how
7   it's being translated for you but I just want you to know
8   what discovery means.
9            THE DEFENDANT:  I said I understand.  I don't
10  -- I don't -- I don't care about her, even if you put her
11  in the same room with me, I will not speak with her.
12           THE COURT:  That's up to you.  I'm sorry, I
13  didn't hear you.
14           THE DEFENDANT:  They're government.  They can
15  bring whatever they want.  They can do whatever they want
16  to me.  I don't mind.
17           THE COURT:  Well, we can't.  We don't let the
18  government whatever they want to people.  So you're in
19  the wrong country for that.
20           THE DEFENDANT:  My attitude is I'm doing the
21  Housa -- I'm following the Housa attitude and that is I'm
22  just -- I just don't care.
23           THE COURT:  Well --
24           THE DEFENDANT:  Thank you very much for
25  everything you've done for me.
```

```
                                                                15
                            Proceedings
 1              THE COURT:  I'm going to keep --
 2              THE DEFENDANT:  But from now on --
 3              THE COURT:  I'm going to keep doing it.  I'm
 4   going to keep doing it.
 5              THE DEFENDANT:  I don't care.
 6              THE COURT:  Okay.  We'll put this down for
 7   another status conference.
 8              THE CLERK:  June 28th at 3 o'clock, counsel.
 9              MR. ARIAIL:  That's fine with the government.
10              MS. KELLMAN:  That's fine.
11              THE INTERPRETER:  June 20th?
12              THE CLERK:  June 28th.
13              THE DEFENDANT:  Next month, you mean?
14              THE COURT:  This month.
15              THE CLERK:  The end of next month.
16              MS. KELLMAN:  No, the end of next month.
17              THE COURT:  I'm sorry, you said May or June?
18   June 28th, I'm sorry.
19              THE DEFENDANT:  No problem.
20              THE COURT:  Good.
21              THE DEFENDANT:  Next month, no problem.  I
22   don't care.  I don't care, you know.
23              THE COURT:  All right.
24              THE DEFENDANT:  I don't care.  I'm not worried
25   about it.
```

```
                                                                16
                         Proceedings
 1            THE COURT:  Okay.  Because of the reasons for
 2  the delay and the complexity of the case, I find that the
 3  delay is excludable.
 4            THE CLERK:  Thank you very much, counsel.
 5            MS. KELLMAN:  Thank you, Judge.
 6            MR. ARIAIL:  Thank you, Judge.
 7                 (Matter concluded)
 8                        -o0o-
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

17

**C E R T I F I C A T E**

      I, LINDA FERRARA, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

      I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

      IN WITNESS WHEREOF, I hereunto set my hand this **15th** day of **May**, 2013.

                            *Linda Ferrara*
                            Linda Ferrara
                            CET**D 656
                            Transcriptions Plus II, Inc.