```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF NEW YORK

--------------------------------X   Docket#
UNITED STATES OF AMERICA,       :   12-cr-00134-ERK-MDG
                                :
     - versus -                 :   U.S. Courthouse
                                :   Brooklyn, New York
ADNAN IBRAHIM HARUN A HAUSA,    :
also known as "Spin Ghul",      :
also known as "Esbin Gol",      :
also known as "Isbungoul",      :
also known as "Abu Tamim",      :
also known as "Joseph Johnson",:    October 31, 2013
also known as                   :
"Mortala Mohamed Adam",         :
              Defendant         :
--------------------------------X
```

TRANSCRIPT OF CRIMINAL CAUSE FOR CONFERENCE
BEFORE THE HONORABLE EDWARD R. KORMAN
UNITED STATES MAGISTRATE JUDGE

**A P P E A R A N C E S:**

**For the Government**:           **Loretta E. Lynch, Esq.**
                                  United States Attorney

                             BY:  **Shreve Ariail, Esq.**
                                  **Amanda Hector, Esq.**
                                  Assistant U.S. Attorney
                                  271 Cadman Plaza East
                                  Brooklyn, New York  11201


**For the Defendant**:            **David Stern, Esq.**
                                  Rothman, Schneider,
                                  Soloway & Stern, P.C.
                                  100 Lafayette Street
                                  Suite 501
                                  New York, NY 10013


**Transcription Service**:        Transcriptions Plus II, Inc.
                                  740 Sharon Road
                                  Copiague, New York 11726
                                  Transcriptions2@verizon.net

Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

2

Proceedings

1            THE CLERK:  United States v. Adnan Hausa.
2            Your appearances, counsel.
3            MS. HECTOR:  Amanda Hector and Shreve Ariail
4   for the government.
5            Good morning, your Honor -- good afternoon.
6            MR. ARIAIL:  Good afternoon, your Honor.
7            MS. KELLMAN:  Good afternoon, your Honor.
8            Susan Kellman and David Stern for Adnan Hausa.
9   We're assisted at counsel table by a Hausa interpreter.
10           THE COURT:  Good afternoon.
11           MS. KELLMAN:  Good afternoon, Judge.
12           THE CLERK:  The interpreter having previously
13  been sworn is still under oath.  Just state your name for
14  the record?
15           THE INTERPRETER:  Shuaib Mohammed Azziz.
16  (INTERPRETER PREVIOUSLY SWORN)
17           THE CLERK:  We're on for status, Judge.
18           MS. HECTOR:  Your Honor, I believe we're here
19  today after having had a previous court appearance about
20  a week ago where there was an issue with an interpreter
21  for the defendant.
22           And I believe that the defense has an
23  application, if they want to explain to the Court what
24  that application is.  While we don't sort of join in the
25  application, we don't have an objection to it.

```
                                                            3
                         Proceedings
 1          MR. STERN:  We're asking to have our client
 2   evaluated in Springfield, Illinois for competency.  We're
 3   in a situation where he neither wants us as lawyers nor
 4   will he respond to the Court's questions and we're not
 5   sure of the reasons for that.
 6          We're also aware that he's had behavior which
 7   has at least been characterized -- we didn't see it
 8   ourselves, Judge -- it's been characterized in documents
 9   as strange behavior.  We want to be sure that as we go
10   ahead in this serious case, he really is competent and
11   the only way we're able to do that is to have him spent
12   to Springfield.
13          We recognize that some investigation in that
14   area has already been done but we don't think that
15   investigation is sufficient.
16          THE COURT:  All right.
17          MS. HECTOR:  Your Honor, I would just -- if I
18   may, if the Court is inclined to grant that request, we
19   would propose that we draft a stipulation along -- a
20   proposed order along with defense counsel that will --
21          THE COURT:  I thought you were going to do that
22   by today.  I thought I indicated I was inclined to grant
23   it.
24          MS. HECTOR:  We can do that in short order.  I
25   apologize.  That wasn't our understanding but we would
```

```
                                                             4
                         Proceedings
 1   draft an order that not only included that proposal but
 2   also made clear that the unclassified discovery that's
 3   already been produced in the case should be provided to
 4   whoever is doing that evaluation, subject to the
 5   protective order and that the defendant's medical -- all
 6   of the defendant's medical records, both that was
 7   reviewed by Dr. Mills previously and additional medical
 8   records that have been generated since then, in addition
 9   to Dr. Mills' report, be subject to the protective order,
10   be provided to anyone who does his evaluation.
11            MR. STERN:  We don't really want Dr. Mills'
12   report to be provided, although we have no objection to
13   the other points.  We don't want them to be influenced by
14   someone else's conclusions.  We want them to make their
15   own conclusion about his condition based on all of the
16   available evidence but that doesn't include someone
17   else's conclusions.
18            MS. HECTOR:  Your Honor, if I may respond to
19   that point?
20            THE COURT:  Yes.
21            MS. HECTOR:  We think it's important,
22   imperative, actually that whoever is doing an evaluation
23   of the defendant have access to all of the relevant
24   information and I believe that that's probably something
25   that any doctor would request to see, especially given
```

5

Proceedings

1 the circumstance that Mr. Hausa often times refuses to
2 communicate with people who are evaluating him and
3 actually had conversations with Dr. Mills for many hours.
4 I think any medical professional could be entrusted with
5 the responsibility to reach their own conclusions
6 independent of other conclusions that have been reached,
7 but should have access to all relevant information.
8            MR. STERN:  We don't have any problem with him
9 seeing the conversation.  We have a problem with him
10 seeing the conclusions.  It's not true that professionals
11 are uninfluenced by other professional conclusions or
12 sometimes concerned about going against those other
13 professional's conclusions.
14            So, I don't understand why his conclusion about
15 this defendant's competence or lack of competence should
16 be provided.  It's true.  He should see any information
17 but that information doesn't include conclusions or
18 should not include conclusions.
19            MS. HECTOR:  Your Honor, in Dr. Mills' report,
20 I believe it would be virtually impossible to disentangle
21 the two.  His report states in detail various
22 observations, the reasons he -- things that he observed
23 about the defendant, conversations that he had with the
24 defendant and the bases for the conclusions that he
25 reached.

```
                                                              6
                        Proceedings
```

1           In my experience, and I know that Dr. Mills
2  made this request as well, before coming to a conclusion
3  often times the psychiatrist will want to speak to the
4  other treating psychiatrist at BOP, at other places, to
5  develop a fulsome record of the defendant's activities
6  and his mental state and his medical history.
7           So, I don't think it would be appropriate to
8  keep that report and I don't believe that there's
9  anything that would substitute for it.
10          MR. STERN:  Well, all he has to do is not
11 discuss his conclusion.  I'm not saying they can't talk
12 to him.  I'm not saying it might not be important.  I'm
13 saying he shouldn't be able to discuss his conclusion.
14 The report is not integrally intermeshed with
15 conclusions.  It's at the end.  His observations, his
16 thoughts; all of those things are fine.
17          We don't want him to discuss his conclusions
18 with other doctors.  Those conclusions, I'm not sure they
19 were all appropriate in the first place --
20          THE COURT:  So, I don't know -- you want me to
21 just block out the part of the letter that says
22 conclusions?
23          MR. STERN:  Yes. And direct him not to tell him
24 his conclusions.  They can ask as many questions as they
25 want about his observations.

Proceedings

1            THE COURT:  Well, for the moment we could give
2    him the letter without the conclusions but if the doctor
3    wants the conclusions, he could have it.  Leave it up to
4    the doctor what he wants to consider.
5            MS. KELLMAN:  Your Honor --
6            THE DEFENDANT:  Can I talk?
7            MS. KELLMAN:  -- my recollection also was the
8    last time we were here --
9            THE COURT:  I mean, if he went to doctor for a
10   second opinion on a particular medical condition --
11           THE DEFENDANT:  May I talk?
12           THE COURT:  -- he would -- in a minute -- he
13   might want to know what the first conclusion was the
14   first time.
15           MR. STERN:  I guess the difference is this
16   isn't purely a medical conclusion.  This is also a legal
17   conclusion and so that distinguishes it from my doctor
18   saying whatever he or she says about me and reporting
19   that to another doctor.  So, I'm not objecting about
20   observations.  I'm not objecting to diagnoses.  We're
21   objecting to his legal conclusion about whether or not
22   this defendant is competent.
23           MS. HECTOR:  Your Honor, I fear that we're
24   setting up a standard that is going to be virtually
25   impossible to follow in practice.  If they're requesting

```
                                                                    8
                          Proceedings
1   that Dr. Mills be able to speak with this person but
2   cabin his comments to only observations and not
3   conclusions, is the same going to be true with respect to
4   every BOP psychiatrist that this individual wants to talk
5   to you that has treated or seen Mr. Hausa in the course
6   of his stay at the MDC?  And how is that going to be
7   communicated to these doctors in a way that is practical
8   for them to follow in their conversations --
9              THE COURT:  I don't know what you're talking
10  about.  They could see all of the papers that have been
11  filed by the -- where is he, at the MDC?  And they could
12  see --
13             MS. HECTOR:  I'm sorry, MCC.
14             THE COURT:  Whatever it is.  And they could see
15  the doctor's report except for the conclusion which is a
16  legal conclusion.
17             MR. STERN:  I feel like I'm not making myself
18  clear.  There's no issue as the Judge suggests with them
19  talking to other doctors.  That is completely
20  appropriate.  So, I don't think it's impractical.  I
21  don't think it's impossible.  I think it's easily done
22  and that's what we're asking for.
23             THE COURT:  All right.  What else?
24             MS. KELLMAN:  There's one further thing, Judge.
25  When we were here last time, counsel for the MCC was
```

```
                                                                9
                          Proceedings
 1  here.  And I think that he had specific guidelines as to
 2  how the order should be done and so perhaps if the
 3  government's going to prepare the order, they ought to do
 4  it in consultation with counsel to the MdC because I
 5  think it suggests that there were certain sections.  And
 6  certain language that we used would not be properly
 7  carried out by the jail persons.
 8          THE COURT:  All right.
 9          You want to speak?
10          THE DEFENDANT:  Yes, your Honor.
11          THE COURT:  I only want you to speak
12  rationally.  I don't want to know about you being my
13  enemy and the whole speech that you've given me the last
14  few times that you've been here.
15          THE DEFENDANT:  You're talking about you?
16          THE COURT:  Not me but you know -- you know
17  what you've said.  You're my enemy, you're an enemy of
18  the United States.  You want to go to the World Court
19  which is impossible.  I can't remember all of the things
20  that you've -- that I've let you go on and on about.  But
21  if you want to speak --
22          THE DEFENDANT:  I don't understand you.
23          THE COURT:  Well, go ahead.
24          THE DEFENDANT:  My suggestion, he spoke to me
25  earlier about the psychologist.  I say I don't want to go
```

Proceedings

10

1 and I let him know that I don't want to go.  And I'm not
2 crazy.  And the way I think, they brought Dr. Mills and
3 he give you a report about me and I'm okay.  And you read
4 it and they told you I'm okay.
5           I don't want to go to any other hospital about
6 this issue.  What I want, if you want to do anything with
7 me, just do me a favor, through the international
8 protocol either through the U.S. court or the New York
9 courts because at the end, I don't understand.  I don't
10 know where America is heading to.
11           I told you I don't have anything here in New
12 York as to plead guilty for.  If it's about the police,
13 then they will let me know; the one in Washington, D.C.
14 The issue that I have through Al Qaeda it has to do with
15 Washington, D.C. and I told you about the issue of
16 Pentagon and also the issue that I have told you about
17 Afghanistan.  And that's number one.
18           The second one, the psychologist doctor at the
19 MCC, he asked me why am I here in New York.  I don't
20 know.  It's FBI that brought me here at MCC.  I'm a
21 foreigner here.
22           Truthfully, I am here a year and one month.  I
23 don't understand everything that happened.  I'm telling
24 you that's the real truth.  I'm a stranger.  I don't know
25 how to speak English.  Get -- you get me the embassy of

                                                                11
                           Proceedings

1  Niger or the government of Niger and I think this one of
2  them -- I write in this one.  And this Court could give
3  me its true, fair trial in this country.
4           And through that, I will know my right and you
5  know your right.  And also since I am not in touch with
6  (indiscernible), I need a help for the French embassy
7  because Niger is the Franco-run company.
8           THE COURT:  I know.  We went through that.
9  We've contacted the embassy of Niger, haven't we?  And
10 somebody was --
11          MS. KELLMAN:  Your Honor, we contacted the
12 embassy and they weren't able to send the convoy, so they
13 sent the ambassador and the ambassador to the country of
14 Niger came here to (indiscernible).  He met with
15 Mr. Hausa and it was only after quite a lengthy meeting
16 that Mr. Hausa is convinced that the person with whom he
17 met wasn't really from the Nigerian embassy.
18          And so we've provided him today the biography
19 of the person with whom he met on a document that came
20 right off the web site of the Niger embassy and that's
21 indicated in the head note on the documents that he
22 (indiscernible) but he is asserted that that individual
23 is not the ambassador of Niger and that he's
24 (indiscernible).
25          THE COURT:  Well, have you seen the reports

```
                                                              12
                         Proceedings
 1   from the MDC describing your behavior?
 2              THE DEFENDANT:  Your report is from where?
 3              THE COURT:  The facility that he is in.
 4              THE DEFENDANT:  At the MCC?
 5              THE COURT:  Whichever one.
 6              THE DEFENDANT:  In MCC, I don't know what it
 7   might have been.
 8              THE COURT:  No, no.  Have you received the
 9   reports for the way that you behaved?
10              THE DEFENDANT:  The report about what?
11              THE COURT:  About his behavior.
12              THE DEFENDANT:  Are you talking about my health
13   situation and everything?
14              THE COURT:  Just the way you behave there in
15   terms of your conduct.  You haven't seen it?  I'll have
16   them show it to you and the interpreter could read it to
17   you.
18              THE DEFENDANT:  The psychiatrist at the MCC?
19   And every month, they do change them.
20              THE COURT:  No, no.  Ms. Kellman, has he seen
21   the reports that --
22              MS. KELLMAN:  He hasn't seen them, sir.  We've
23   discussed the contents of the reports.  These are
24   difficult even with an interpreter but we had -- are
25   having it actually translated.  We have discussed with
```

```
                                                           13
                        Proceedings
 1   him his conduct, the reports of his conduct and the MCC's
 2   difficulty with his conduct.  And we've explained to him
 3   that that is what is giving rise to our request to have
 4   him sent to Springfield.  So, he hasn't physically seen
 5   them.  We have discussed them (indiscernible).
 6            THE DEFENDANT:  I didn't see the report and
 7   everything is in English.  I hardly speak English.  My
 8   English is limited.  They don't have a Hausa interpreter.
 9   And whatever they ask you --
10            THE COURT:  Well, we have an interpreter here.
11   We'll take a recess and let him read you the documents
12   and then you'll come back today.  Today.
13            THE DEFENDANT:  I don't know what I'm asking,
14   my request, if I can get the French embassy.
15            THE COURT:  We've been through this.  If you
16   want to read the reports, I'll have the interpreter read
17   them to you today.  Your behavior has been bizarre and
18   has raised serious questions about your mental
19   competence.  And that's the reason why I am going -- am
20   inclined to send you to Springfield.  It's a facility
21   that has the ability to analyze your mental capacity.
22            THE DEFENDANT:  The truth, I don't understand
23   any of it.  You cause it.  You caused it.
24            MS. KELLMAN:  Caused it.
25            THE CLERK:  Caused it.
```

```
                                                              14
                          Proceedings
1            THE DEFENDANT:  If a French or some
2   international body come into the situation, that would be
3   better.  If there's none, you don't have (indiscernible)
4   with anybody.  Do whatever you feel like.  Tell me
5   whatever it was (indiscernible).  If you want to send me,
6   go and send me.
7            THE COURT:  Okay.  That's what I am going to
8   do.  That's it.
9            THE CLERK:  Counsel, you can e-mail the joint
10  order.
11           MS. HECTOR:  Yes.
12           THE CLERK:  Thank you.
13           THE COURT:  And make sure you arrange for the
14  -- they have interpreters in Springfield who could deal
15  with this.
16           MS. HECTOR:  Absolutely.  And we would request
17  that time be excluded while the defendant is evaluated.
18           THE COURT:  It obviously is excluded.
19           MR. STERN:  This is our request, too.
20           THE COURT:  Yes, well it's a --
21           MS. HECTOR:  Should we set another status
22  conference at this time or --
23           THE COURT:  Well, we have to wait to --
24           THE CLERK:  Thirty days after --
25           THE COURT:  If you agree on the order, we don't
```

```
                                                              15
                         Proceedings
 1  need a status conference.
 2          MS. HECTOR:  Okay.
 3          MR. STERN:  I'm confident we're going to agree
 4  on this.
 5          THE COURT:  So, then we don't need another
 6  status conference until we hear from Springfield.
 7          THE CLERK:  Customarily --
 8          MS. HECTOR:  So, it's excluded without date.
 9          THE CLERK:  -- there's no end date and then
10  once we receive the report, I will schedule a status
11  conference within thirty days of (indiscernible).
12          MS. HECTOR:  Okay, great.  Thank you.
13          THE CLERK:  Thank you, counsel.
14          MR. STERN:  Thank you, your Honor.
15               (Matter concluded)
16                     -o0o-
17
18
19
20
21
22
23
24
25
```

16

# C E R T I F I C A T E

I, LINDA FERRARA, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **24th** day of **March**, 2014.

*Linda Ferrara*
Linda Ferrara

CET**D 656
Transcriptions Plus II, Inc.