SA/MJJ/MW/JNK
F#2011R01313

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA                12 CR 134 (BMC)

     - against -

IBRAHIM SULEIMAN ADNAN
ADAM HARUN,
also known as "Spin Ghul," "Esbin
Gol," "Isbungoul," "Abu Tamim,"
"Joseph Johnson" and "Mortala
Mohamed Adam,"

           Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - -X

<u>THE GOVERNMENT'S REQUESTS TO CHARGE</u>

                                    BRIDGET ROHDE
                                      ACTING UNITED STATES
                                      ATTORNEY
                                      Eastern District of New York
                                      271 Cadman Plaza East
                                      Brooklyn, New York 11201

Shreve Ariail
Melody Wells
Matthew J. Jacobs
Assistant U.S. Attorneys

Joseph N. Kaster
Trial Attorney

(Of Counsel)

## PRELIMINARY STATEMENT

The government respectfully requests that the Court reinstruct the jury regarding the defendant's absence in the Courtroom, consistent with the Court's preliminary instruction, and include the attached instructions in its charge to the jury.   The government requests leave to offer such additional instructions as may become appropriate during the course of the trial.

REQUEST NO. 1

General Requests

The government requests that the Court charge the jury in its usual manner on the following subjects:

(a)    Function of the Court, the Jury, and Counsel;

(b)    Jury Communications with Lawyers and the Court;

(c)    Equality of the Prosecution and the Defense before the Court;

(d)    Presumption of Innocence;

(e)    Burden of Proof and Reasonable Doubt;

(f)    Function of the Indictment and What is Not Evidence;

(g)    Circumstantial Evidence and Direct Evidence;

(h)    Inferences Drawn from the Evidence;

(i)    All Available Evidence Need Not Be Produced;

(j)    Stipulations;

(k)    Objections;

(l)    Credibility of Witnesses and Discrepancies in Testimony;

(m)    Jury's Right to See Exhibits and Have Testimony Read During Deliberations;

(n)    No Inference to be Drawn From Defendant's Failure to Testify (if applicable);

(o)    Testimony of Defendant (if applicable);

3

(p)    Questioning Wisdom of Law or Basing Verdict on Sympathy or Prejudice Prohibited;

(q)    Acts and declarations of coconspirators;

(r)    Considerations of Punishment Not the Province of the Jury;

(s)    Dates in Indictment Are Approximate;

(t)    Specific Law Enforcement Techniques Not Required;

(u)    Meaning of "And" in the Indictment;

(v)    Use of Charts and Summary Exhibits; and

(w)    Knowing and intentional conduct.

REQUEST NO. 2

Conspiracy

With respect to Counts One, Two, and Three the defendant is charged with being part of a conspiracy.   Specifically, with respect to Count One, he is charged with conspiring to murder one or more U.S. nationals; with respect to Count Two, he is charged with conspiring to bomb a U.S. government facility; and with respect to Count Three he is charged with conspiring to provide material support to a foreign terrorist organization.

A conspiracy is a kind of criminal partnership -- a combination or agreement of two or more persons to join together to accomplish some unlawful purpose.   The crime of conspiracy to violate a federal law is an independent offense.   It is separate and distinct from the actual violation of any specific federal laws, which the law refers to as "substantive crimes."   Indeed, you may find the defendant guilty of the crime of conspiracy to commit an offense against the United States even though the substantive crime which was the object of the conspiracy was not actually committed.   Congress has deemed it appropriate to make conspiracy, standing alone, a separate crime even if the conspiracy is not successful.   This is because collective criminal activity poses a greater threat to the public's safety and welfare than individual conduct, and increases the likelihood of success of a particular criminal venture.

There are two elements that all conspiracy charges require.   First, the government must prove the existence of the charged conspiracy.   Second, the government

5

must prove that the defendant was a member of the charged conspiracy.   As you will see, sometimes there are additional elements as well, but all conspiracy charges have those two elements in common.

To establish the existence of a conspiracy, the government is not required to show that two or more people sat around a table and entered into a contract, orally or in writing, stating that they had formed a conspiracy and spelling out all the details.   Common sense tells you that when people agree to enter into a criminal conspiracy, much is left to the unexpressed understanding.   Common sense tells you that criminal co-conspirators do not usually reduce their agreements to writing, or publicly broadcast their plans.   It is rare that a conspiracy can be proven by direct evidence of an explicit agreement.

In determining whether there has been an unlawful agreement as alleged, you may judge the acts and the conduct of the alleged co-conspirators that were done to carry out the apparent criminal purpose.   The old adage, actions speak louder than words, applies here.   Often, the only evidence that is available with respect to the existence of a conspiracy is that of disconnected acts and conduct on the part of the alleged individual co-conspirators. However, when taken all together, and with the reasonable inferences that flow from them, those acts and conduct may show a criminal agreement as satisfactorily and conclusively as would direct proof.

So, you must first determine whether or not the proof established beyond a reasonable doubt the existence of the conspiracy as charged in the Indictment.

6

In considering this first element as to Counts One, Two, and Three you should consider all the evidence admitted with respect to the conduct and statements of each alleged co-conspirator and such inferences as may be reasonably drawn from them, consistent with my instructions regarding acts and declarations of coconspirator.

The second element that the government must prove with respect to each charged conspiracy is that the defendant became a member of the conspiracy with knowledge of its criminal goal and intending by his actions to help it succeed.   Merely being present at a place where criminal conduct is underway does not make a person a member of a conspiracy to commit a crime.   What is required is that a defendant must have participated with knowledge of at least some of the purposes or objectives of the conspiracy, and with the intention of aiding in the accomplishment of its unlawful goal.

The extent of a defendant's participation in a conspiracy has no bearing on the issue of guilt.   Some conspirators might play major roles.   Others may play minor roles.   A defendant need not have known the identities of each and every member of the scheme.   He need not have been fully informed as to all of the details or scope of the conspiracy.   He does not have to be a member of it for the entire time of its existence.

The key inquiry is whether the defendant joined the conspiracy charged with an awareness of at least some of the basic aims and purposes of the unlawful agreement and with the intent to help it succeed.

<u>Authority</u>

Adapted from Sand, Form Instructions 19-2, 19-3, 19-4, 19-6; Charge of the Hon. John Gleeson in <u>United States v. Betim Kaziu</u>, 09-CR-660 (S-1)(JG); charge of the

7

Hon. Dora L. Irizarry in <u>United States v. DeFreitas et al.</u>, 07-CR-543 (E.D.N.Y. 2010)(DLI). <u>See generally</u> <u>United States v. Rea</u>, 958 F.2d 1206, 1214 (2d Cir. 1992); <u>United States v. Montour</u>, 944 F.2d 1019, 1025 (2d Cir. 1991).

REQUEST NO. 3

COUNT ONE

Conspiring to Murder United States Nationals
(18 U.S.C. § 2332(b))

Count One of the Indictment charges the defendant with conspiring to kill United States nationals. Specifically, Count One alleges in relevant part:

> In or about and between August 2001 and September 2011, both dates being approximate and inclusive, within the extraterritorial jurisdiction of the United States, the defendant IBRAHIM SULEIMAN ADNAN ADAM HARUN, also known as "Spin Ghul," "Esbin Gol," "Isbungoul," "Abu Tamim," "Joseph Johnson" and "Mortala Mohamed Adam," together with others, while outside the United States, did knowingly, intentionally and with malice aforethought conspire to kill one or more nationals of the United States, which killings would have constituted murder. . .
>
> In furtherance of the conspiracy, and to effect its objects, the defendant IBRAHIM SULEIMAN ADNAN ADAM HARUN together with others, committed and caused to be committed, among others, the following overt acts: (a) in or about and between 2002 and 2003, both dates being approximate and inclusive, the defendant IBRAHIM SULEIMAN ADNAN ADAM HARUN, together with others, attempted to kill United States military personnel in Afghanistan; (b) in or about August 2003, the defendant IBRAHIM SULEIMAN ADNAN ADAM HARUN traveled from Pakistan to Nigeria; and (c) in or about and between August 2003 and January 2005, both dates being approximate and inclusive, the defendant IBRAHIM SULEIMAN ADNAN ADAM HARUN traveled within Nigeria and other African countries.

The statute relevant to Count One is Section 2332(b) of Title 18, United States Code, which provides in relevant part:

9

> Whoever outside the United States . . . engages in a conspiracy to kill, a national of the United States . . . in the case of a conspiracy by two or more persons to commit a killing that is a murder . . . [and] if one or more of such persons do any overt act to effect the object of the conspiracy, [is guilty of a crime.]

As to the elements of Count One, I have previously explained to you the law governing conspiracy.   The elements of Count One are set forth below.

First, the government must prove the existence of the charged conspiracy to kill one or more nationals of the United States.   I instruct you that a "national of the United States" is simply a citizen of the United States.   In connection with this Count, you are instructed that "murder" is the unlawful killing of a human being with what is called malice aforethought.   To act with malice aforethought means to act willfully, with the intent to kill another person.    Willfully means to act with knowledge that one's conduct is unlawful and with the intent to do something the law forbids, that is to say with the bad purpose either to disobey or to disregard the law.   A defendant's conduct was not "willful" if it was due to negligence, inadvertence, or mistake.   However, the government need not prove spite, malevolence, hatred, or ill will.

Second, the government must prove that the defendant was a member of the charged conspiracy with knowledge of its criminal goal and intending by his actions to help it succeed;

Third, the government must prove another element, specifically that an overt act occurred, that is, someone within the conspiracy took some action that advanced the goals

10

of the conspiracy.   That is, the government must prove beyond a reasonable doubt that least one of the conspirators, not necessarily the defendant, committed at least one overt act in furtherance of the conspiracy.   In other words, there must have been something more than an agreement – some overt step or action must have been taken by the defendant or one of the conspirators in furtherance of the conspiracy.   The overt act element, to put it another way, is a requirement that the agreement went beyond the mere talking stage, the mere agreement stage.   With respect to the overt act requirement, the government may satisfy this element by proving one of the overt acts alleged in the Indictment, but it is not required to prove any of those particular overt acts.   It is enough if the government proves that at least one overt act was committed in furtherance of the conspiracy, whether or not alleged in the indictment.

Similarly, it is not necessary for the government to prove that each member of the conspiracy committed or participated in the overt act.   It is sufficient if you find that at least one overt act was in fact performed by at least one conspirator, whether the defendant or another co-conspirator, to further the conspiracy within the time frame of the conspiracy. Remember, the act of any one of the members of a conspiracy, done in furtherance of the conspiracy, becomes the act of all the other members.   To be a member of the conspiracy, it is not necessary for the defendant to commit an overt act.

Fourth, the Government also must prove beyond a reasonable doubt a fourth element, specifically that the defendant engaged in the charged conspiracy while outside of the United States.   Thus, you must find that the defendant's illegal agreement to kill United

11

States nationals existed outside of the United States, and that the defendant knowingly and

willfully engaged in that conspiracy while outside of the United States.

<u>Authority</u>

Adapted from the jury instructions in <u>United States v. Usama Bin Laden, et al.</u>, S7 98 Cr. 1023 (S.D.N.Y. 2001); <u>see also</u> charge of Judge Hellerstein in <u>United States v. Rodriguez</u>, 03 Cr. 1280 (AKH), at 1031-33 (S.D.N.Y. Feb. 4, 2005); 1 Sand Instr. 19-4; <u>see</u> <u>U.S. v. Kozeni</u>, 667 F.3d 122, 131-132 (2d. Cir. 2011)(discussing overt acts in connection with conspiracy).

REQUEST NO. 4

COUNT TWO

<u>Conspiracy to Bomb a Government Facility</u>
(18 U.S.C. § 2332f(a))

Count Two of the Indictment reads as follows:

In or about and between August 2003 and January 2005, both dates being approximate and inclusive, within the extraterritorial jurisdiction of the United States, the defendant IBRAHIM SULEIMAN ADNAN ADAM HARUN, also known as "Spin Ghul," "Esbin Gol," "Isbungoul," "Abu Tamim," "Joseph Johnson" and "Mortala Mohamed Adam," together with others, did knowingly and intentionally conspire to unlawfully deliver, place, discharge and detonate one or more explosives . . .   in, into and against one or more government facilities, to wit: United States diplomatic and consular facilities in Nigeria, with the intent to cause death, serious bodily injury and extensive destruction of such facilities, where such destruction was likely to result in major economic loss….

The statute relevant to Count Four is Section 2332f(a) of Title 18, United

States Code, which provides in relevant part:

Whoever… conspires to…unlawfully deliver... place… discharge… or detonate… an explosive or other lethal device in, into, or against a place of public use, a state or government facility …shall be [punished].

To find the defendant guilty of conspiracy to bomb a U.S. government facility,

you must find that the government has proved each of the following four things beyond a

reasonable doubt:

<u>First</u>, that there was a conspiracy among two or more persons to deliver, place,

discharge, or detonate an explosive in, into, or against one or more U.S. government

13

facilities, specifically United States diplomatic and consular facilities in Nigeria, with either (a) the intent to cause death or serious injury or (b) the intent to cause extensive destruction of such facility or facilities, where such destruction likely would result in major economic loss.   I have previously instructed you on the law governing conspiracy;

Second, that the defendant was a member of that conspiracy with knowledge of its criminal goal and intending by his actions to help it succeed;

Third, that there was federal jurisdiction over the offense.   There is federal jurisdiction over an offense that occurred outside the United States if the target of the offense was a government facility of the United States, including an embassy or other diplomatic or consular premises of the United States.   There is also federal jurisdiction if the intended victim or victims are nationals of the United States.   Finally, there is also federal jurisdiction if the offense was an attempt to compel the United States to do or abstain from doing any act.

I further instruct as to the meaning of the following terms:

A "government facility" includes any permanent or temporary facility that is used or occupied by representatives of the United States government.

The statute defines an "explosive" – as something that is designed, or has the capability, to cause death, serious bodily injury, or substantial material damage, and includes "gunpowders, powders used for blasting, all forms of high explosives, blasting materials, fuzes (other than electric circuit breakers), detonators, and other detonating agents,

14

smokeless powders, and any chemical compounds, mechanical mixture, or device that contains any oxidizing and combustible units, or other ingredients, in such proportions, quantities, or packing that ignition by fire, by friction, by concussion, by percussion, or by detonation of the compound, mixture, or device or any part thereof may cause an explosion.

The statute also defines "explosives" as other explosive or incendiary devices, such as "(A) dynamite and all other forms of high explosives, (B) any explosive bomb, grenade, missile, or similar device, and (C) any incendiary bomb or grenade, fire bomb, or similar device, including any device which (i) consists of or includes a breakable container including a flammable liquid or compound, and a wick composed of any material which, when ignited, is capable of igniting such flammable liquid or compound, and (ii) can be carried or thrown by one individual acting alone."

15

REQUEST NO. 5

COUNT THREE

Conspiracy to Provide Material Support to a Foreign Terrorist Organization
(18 U.S.C. ' 2339B)

Count Three of the Indictment reads as follows:

In or about and between August 2001 and September 2011, both dates being approximate and inclusive, within the extraterritorial jurisdiction of the United States, the defendant IBRAHIM SULEIMAN ADNAN ADAM HARUN, also known as "Spin Chul," "Esbin Gol," "Isbungoul," "Abu Tamim," "Joseph Johnson" and "Mortala Mohamed Adam," together with others, did knowingly and intentionally conspire to provide material support and resources, as defined in Title 18, United States Code, Section 2339A(b), including false documentation and identification . . . explosives and personnel, including himself, to a foreign terrorist organization, to wit: al-Qaeda

The statute relevant to Count Three is Section 2339B(a)(1) of Title 18, United States Code, which reads in relevant part:

Whoever knowingly provides material support or resources to a foreign terrorist organization… or conspires to do so, shall be [punished].

To prove a violation of Section 2339B(a)(1), the government must establish each of the following elements beyond a reasonable doubt:

First, that there was a conspiracy among two or more persons to provide material support or resources to a foreign terrorist organization, specifically al-Qaeda.

Second, that the defendant became a member of that conspiracy with knowledge of its criminal goal and intending by his actions to help it succeed.

16

<u>Three</u>, that that there was federal jurisdiction over the offense.    There is federal jurisdiction over the offense if, after the conduct required for the offense occurred, the defendant was brought into or found in the United States, even if the conduct required for the offense occurred outside the United States.    There is also federal jurisdiction over the offense if the offense occurs in or affects interstate or foreign commerce.

With respect to the first element of this count, I have previously instructed you on the law governing conspiracy.    I instruct you as a matter of law that al-Qaeda has been designated a foreign terrorist organization by the United States Secretary of State, and was so designated by the Secretary on October 8, 1999.

With respect to the second element of this count, you must find beyond a reasonable doubt that the object of the conspiracy was to provide material support and resources, namely false documentation and identification, explosives, and personnel.    The term "personnel" means one or more persons, which can include a defendant's own person. The defendant can be convicted with violating this statute if he conspired to provide personnel, including himself, to work under the direction or control of al-Qaeda.

With respect to the third element of this count, I previously explained to you the definitions of knowingly and intentionally.    In addition, the government must prove that the defendant took part in the conspiracy knowing at least one of these three things: (1) al-Qaeda was designated as a foreign terrorist organization; (2) al-Qaeda engaged in terrorist activity; or (3) al-Qaeda engaged in terrorism.

17

For these purposes, the term "terrorist activity" includes any of the following actions:

1. Hijacking or sabotage of an aircraft, vessel, vehicle, train, or other conveyance;

2. Seizing, detaining, or threatening to kill, injure or further detain another person to compel or coerce some third party, including a government, to do or abstain from doing some act;

3. A violent attack upon an internationally protected person, including employees and officials of governments or international organizations;

4. Assassination;

5. Use of any chemical, biological, or nuclear weapons or device, with intent to endanger, directly or indirectly, the safety of one or more individuals or to cause substantial damage to property;

6. Use of any explosive, firearm, or other weapon or dangerous device, other than for monetary gain and with intent to endanger, directly or indirectly, the safety of one or more individuals or to cause substantial damage to property; or

7. A threat, attempt, or conspiracy to do any of the foregoing.

For these purposes, the term "terrorism" means premeditated, politically motivated violence perpetrated against noncombatant targets by sub-national groups or clandestine agents.

18

The parties have stipulated that the defendant was first brought to a location within the United States located in the Eastern District of New York.   Additionally, interstate or foreign commerce is affected if a minimal effect on such commerce is proved by the government beyond a reasonable doubt.   It doesn't have to be a direct effect.   Any effect, even an indirect or slight one is sufficient to satisfy the interstate or foreign commerce element.   It also doesn't matter whether the effect is harmful or beneficial to interstate or foreign commerce.

Authority

See Count Four, infra.; Adapted from charge of the Hon. Nicholas Garaufis in U.S. v. Pugh, 15-CR-116 (NGG), and from the Hon. John Gleeson in U.S. v. Kaziu, 09-CR-660 (JG).

19

REQUEST NO. 6

COUNT FOUR

Provision and Attempted Provision of Material Support
to a Foreign Terrorist Organization
(18 U.S.C. ' 2339B)

Count Four of the Indictment reads as follows:

In or about and between August 2001 and January 2005, both dates being approximate and inclusive, within the extraterritorial jurisdiction of the United States, the defendant IBRAHIM SULEIMAN ADNAN ADAM HARUN, also known as "Spin Chul," "Esbin Gol," "Isbungoul," "Abu Tamim," "Joseph Johnson" and "Mortala Mohamed Adam," together with others, did knowingly and intentionally provide and attempt to provide material support and resources, as defined in Title 18 United States Code, Section 2339A(b), including false documentation and identification, . . . explosives and personnel, including himself , to a foreign terrorist organization, to wit: al-Qaeda.

The statute relevant to Count Four is Section 2339B(a)(1) of Title 18, United States Code, which reads in relevant part:

Whoever knowingly provides material support or resources to a foreign terrorist organization, or attempts . . . to do so . . . shall be [punished].

To prove a violation of Section 2339B(a)(1), the government must establish each of the following elements beyond a reasonable doubt:

First, that the defendant provided or attempted to provide material support or resources;

Second, that the defendant provided or attempted to provide this support or these resources to a foreign terrorist organization, specifically al-Qaeda;

20

Third, that the defendant did so knowingly and intentionally; and

Fourth, that there was federal jurisdiction over the offense.   There is federal jurisdiction over the offense if, after the conduct required for the offense occurred, the defendant was brought into or found in the United States, even if the conduct required for the offense occurred outside the United States.   There is also federal jurisdiction over the offense if the offense occurs in or affects interstate or foreign commerce.

With respect to the first element of this count, you must find beyond a reasonable doubt that the defendant provided or attempted to provide material support or resources, namely false documentation and identification, explosives, or personnel, including himself.   The terms have the same meaning as I explained in connection with Count Three.

The second element you must find beyond a reasonable doubt is that the defendant provided or attempted to provide these resources to a foreign terrorist organization, namely, al-Qaeda.   I instructed you previously as a matter of law that al-Qaeda has been designated a foreign terrorist organization by the United States Secretary of State. Consequently, if you find beyond a reasonable doubt that the defendant provided or attempted to provide any of the types of material support or resources I previously enumerated to al-Qaeda, or furnished it to any person acting on behalf of al-Qaeda, during the period charged in the Indictment, the government's burden with respect to this element has been met.

The third element you must find beyond a reasonable doubt is that in providing or attempting to provide material support or resources to al-Qaeda, the defendant

21

did so knowingly and intentionally.   I previously explained to you the definitions of knowingly and intentionally. As I previously explained in connection with Count Three, the government must prove that the defendant knew at least one of the following three things: (1) al-Qaeda had been designated by the Secretary of State as a foreign terrorist organization; (2) al-Qaeda engaged in terrorist activity, defined above; or (3) al-Qaeda engaged in terrorism. The terms "terrorist activity" and "terrorism" were defined previously.

As I have previously mentioned, the parties have stipulated that the defendant was first brought to the United States to location in the Eastern District of New York.   I have also previously instructed you that interstate or foreign commerce is affected if a minimal effect on such commerce is proved by the government beyond a reasonable doubt.   It doesn't have to be a direct effect.   Any effect, even an indirect or slight one is sufficient to satisfy the interstate or foreign commerce element.   It also doesn't matter whether the effect is harmful or beneficial to interstate or foreign commerce.

<u>Authority</u>

Adapted from charge of the Hon. Nicholas Garaufis in <u>U.S. v. Pugh</u>, 15-CR-116 (NGG), and the charge of the Hon. Raymond J. Dearie in <u>United States v. Abid Naseer</u>, 10-CR-19 (S-4)(RJD).

22

REQUEST NO. 7

COUNT FOUR

Attempt to Commit a Crime

In Count Four, the government has charged the defendant in the alternative, with either providing or attempting to provide material support to a foreign terrorist organization.   To find the defendant of Count Four, you must find that the government has proven that the defendant either provided material support to the foreign terrorist organization, or attempted to do so.   The government need not prove both.   To prove the charge of attempted provision of material support to a foreign terrorist organization, the government must prove the following two elements beyond a reasonable doubt:

First, that the defendant intended to commit the crime of Providing Material Support to a Foreign Terrorist Organization; and

Second, that the defendant did some act that was a substantial step in an effort to bring about or accomplish the crime.

Mere intention to commit a specific crime does not amount to an attempt.   In order to convict the defendant of an attempt, you must find beyond a reasonable doubt that the defendant intended to commit the crime charged, and that he took some action which was a substantial step toward the commission of that crime.

In determining whether the defendant's actions amounted to a substantial step toward the commission of the crime, it is necessary to distinguish between mere preparation on the one hand, and the actual doing of the criminal deed on the other.   Mere preparation,

23

which may consist of planning the offense, or of devising, obtaining or arranging a means for its commission, is not an attempt, although some preparations may amount to an attempt. The acts of a person who intends to commit a crime will constitute an attempt when the acts themselves clearly indicate an intent to commit the crime, and the acts are a substantial step in a course of conduct planned to culminate in the commission of the crime.   A defendant may be convicted of attempt even where significant steps necessary to carry out the substantive crime are not completed.

<u>Authority</u>

See Sand, Form Instruction 10-1; Charge of the Hon. Nicholas Garaufis in U.S. v. Pugh, 15-CR-116 (NGG); see United States v. Farhane, 634 F.3d 127, 146-155 (2011)(discussing the substantial step requirement in the context of material support).

24

REQUEST NO. 8

COUNT FIVE[1]

Use of Explosives

(18 U.S.C.§ 844(h)(1), (2))

The indictment charges the defendant with the crime of using and carrying explosives to commit the crimes charged in Count One, Three, and Four, including Conspiracy to Murder one or more U.S. Nationals, Conspiracy to Provide Material Support to a Foreign Terrorist Organization, and Provision and Attempted Provision of Material Support to a Foreign Terrorist Organization.

The indictment reads as follows:

In or about and between August 2001 and September 2011, both dates being approximate and inclusive, within the extraterritorial jurisdiction of the United States, the defendant IBRAHIM SULEIMAN ADNAN ADAM HARUN, also known as "Spin Ghul," "Esbin Gol," "Isbungoul," "Abu Tamim," "Joseph Johnson" and "Mortala Mohamed Adam," together with others, did knowingly and intentionally use one or more explosives, to wit: gunpowder, explosive bombs, grenades, missiles and other similar devices, to commit one or more felonies, to wit: the crimes charged in Counts One, Three and Four, and did knowingly and intentionally carry such explosives during the commission of said felonies

---

1 In light of the evidence offered thus far in the government's case-in-chief, and given concerns raised by the Second Circuit in United States v. Praddy, 725 F.3d 147 (2d Cir. 2013), which was decided by the Circuit after the indictment was returned in this case (February 2012), the government does not intend to present to the jury original Count Five, illegal use of firearms, in violation of Title 18, United States Code, Section 924(c).   In order to avoid confusion, the government proposes that the Court refer to this Count as Count Five in its instructions to the jury.

25

The defendant has been charged with a violation of Sections 844(h)(1) and (h)(2) of Title 18 of the United States Code, which provides:

> Whoever . . . uses fire or an explosive to commit any felony which may be prosecuted in a court of the United States, or carries an explosive during the commission of any felony which may be prosecuted in a court of the United States [is guilty of a crime].

To prove a violation of Count Five, the government must prove each of the following elements beyond a reasonable doubt:

First, that the defendant committed a felony for which he may be prosecuted in a court of the United States;

Second, that the defendant used an explosive, including gunpowder, explosive bombs, grenades, missiles or other similar devices, to commit that felony, or carried such an explosive during its commission.

The first element which the government must prove beyond a reasonable doubt is that the defendant committed a felony for which he may be prosecuted in a court of the United States.   The defendant is charged in Counts One, Three and Four of the Indictment with committing the crimes of conspiring to murder one or more U.S. nationals, conspiring to provide material support to a foreign terrorist organization, and provision and attempted provision of material support to a foreign terrorist organization.   I instruct you that these crimes are felonies for which the defendant might be prosecuted in a court of the

26

United States.   If you find beyond a reasonable doubt that the defendant committed Counts One, Three or Four, the government has proven the first element of this offense.

In reaching your verdict on Count Five you may consider the evidence of Counts One, Three and Four for the purpose of determining whether the first element of this count has been satisfied.   You do not necessarily need to convict the defendant, however, of either Counts One, Three or Four, to find that the government has met its burden with regard to the first element.

The second element the government must prove beyond a reasonable doubt is that the defendant used an explosive to commit the crimes charged in Count One, Three and Four, or carried an explosive during their commission.   Under this statute, to <u>use</u> fire or an explosive to commit a crime means to use it in such a way that it was an integral part of the commission of the crime, and not something incidental or independent or that merely happened to facilitate or assist in the commission of the crime.

The statute defines "explosive" as "gunpowders, powders used for blasting, all forms of high explosives, blasting materials, fuses (other than electric circuit breakers), detonators and other detonating agents, smokeless powders, other explosive or incendiary devices, and any chemical compounds, mechanical mixture, or device that contains any oxidizing and combustible units, or other ingredients, in such proportions quantities, or packing that ignition by fire, by friction, by concussion, by percussion, or by detonation of the compound, mixture or device or any part thereof may cause an explosion."

27

The statute also defines "explosive" to include "dynamite and all other forms of high explosives … any bomb, grenade, missile, or similar device, and … any incendiary bomb or grenade, fire bomb, or similar device, including any device which … consists of or includes a breakable container including a flammable liquid or compound, and a wick composed of any material which, when ignited, is capable of igniting such flammable liquid or compound, and … can be carried or thrown by one individual acting alone."

Under this statute, to <u>carry</u> an explosive means to have it within your control at the time of the commission of the crimes of conspiring to murder U.S. nationals, conspiring to provide material support to a foreign terrorist organization, and providing and attempting to provide material support to a foreign terrorist organization.   The defendant did not necessarily have to hold it physically, that is, have actual possession of it on his person.   If you find that the defendant had dominion and control over the explosive, and had the power and intention to exercise control over the explosive, you may find that the government has proven that the defendant carried the explosive.

<u>Authority</u>

Adapted from Modern Federal Jury Instructions 30-7, 30-8, 30-9, 30-10

REQUEST NO. 9

COUNT FIVE

Aiding and Abetting

In Count Five, the government has charged the defendant with aiding and abetting the offense. Aiding and abetting is defined under federal law in Title 18, U.S.C., Section 2, which provides, in pertinent part, the following:

> Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
>
> Under the aiding and abetting statute, it is not necessary for the government to show that a defendant himself physically committed the crime with which he is charged in order for you to find the defendant guilty.

A person who aids or abets another to commit an offense, or who counsels, commands, induces, or procures the commission of the offense, is just as guilty of that offense as if he committed it himself.

Accordingly, where aiding and abetting is charged, you may find the defendant guilty of the offense charged if you find beyond a reasonable doubt that the government has proved that another person actually committed the offense with which the defendant is charged, and that the defendant aided or abetted that person in the commission of the offense.

As you can see, the first requirement is that you find that another person has committed the crime charged. Obviously, no one can be convicted of aiding and abetting

29

the criminal acts of another if no crime was committed by the other person in the first place. But if you do find that a crime was committed, then you must consider whether the defendant aided or abetted the commission of the crime.

In order to aid or abet another to commit a crime, it is necessary that the defendant willfully and knowingly associate himself in some way with the crime, and that he willfully and knowingly seek to help make the crime succeed.

Participation in a crime is willful if it is done voluntarily and intentionally, or, in the case of a failure to act, with the specific intent to fail to do something the law requires to be done; that is to say, with a bad purpose either to disobey or to disregard the law.

An inference of criminal participation in a criminal offense cannot be drawn merely from presence. A culpable purpose is essential. A defendant's presence is a circumstance from which guilt may be deduced if that presence is meant to assist the commission of the offense or is pursuant to an understanding that he is on the scene for that purpose. Presence is thus equated to aiding and abetting when it is shown that its purpose is to encourage the perpetrator, facilitate the unlawful deed, or stimulate others to render assistance to the criminal act. But mere presence at the scene of the crime without these or similar attributes is insufficient to identify a defendant as a party to the crime.

<u>Authority</u>

Adapted from Sand, Instruction 11-2.

30

REQUEST NO. 10

Venue

Federal law provides rules that govern where, that is, in what district, a criminal prosecution may be brought by the government. These are known as "venue" rules. As you have heard throughout the trial, the acts alleged to have taken place occurred overseas, in various countries.    Nevertheless, American law provides that the defendant may be prosecuted here in the Eastern District of New York if you find, by a preponderance of the evidence, that the defendant was first brought into the United States in connection with these charges within the Eastern District of New York.    To prove something by a preponderance of the evidence means to prove that it is more likely true than not true.    It is determined by considering all of the evidence and deciding which evidence is more convincing.    If the evidence appears to be equally balanced, or if you cannot say upon which side it weighs heavier, you must resolve this question against the Government.    As I have indicated previously, the parties have stipulated that the defendant was first brought to the United States to a location in the Eastern District of New York.

Authority

See 18 U.S.C. § 3238 ("The trial of all offenses begun or committed upon the high seas, or elsewhere out of the jurisdiction of any particular State or district, shall be in the district in which the offender, or any one of two or more joint offenders, is arrested or is first brought. . . ."); adapted from the jury instructions in United States v. Yousef, S12 93 Cr. 180 (KTD), at 5594-96 (Aug. 29, 1996).

31

REQUEST NO. 11

Testimony of Government Employees

During the trial, you heard testimony from government employees, including law enforcement and some current and former military officers.

The fact that a witness is or was a government employee does not mean that his or her testimony is entitled to any greater weight.   By the same token, the witness's testimony is not entitled to less consideration simply because he or she is a government employee.

You should consider the testimony of government employees just as you would consider any other evidence in the case and evaluate their credibility just as you would that of any other witness.   After reviewing all the evidence, you will decide whether to accept the testimony of government employee witnesses, and what weight, if any, that testimony deserves.

Authority

Adapted from charge of the Hon. Nicholas G. Garaufis in United States v. Micheal Ledee, 11-CR-175 (NGG), and the charge of the Hon. I. Leo Glasser in United States v. Buntin McPherson, 90-CR-896 (ILG).

32

REQUEST NO. 12

Expert Testimony

In this case, I have permitted certain witnesses to express their opinions about matters that are at issue.   A witness may be permitted to testify to an opinion on those matters about which he or she has special knowledge, skill, experience, and training.   Such testimony is presented to you on the theory that someone who is experienced and knowledgeable in the field can assist you in understanding the evidence or in reaching an independent decision on the facts.

In weighing this opinion testimony, you may consider the witness's qualifications, his or her opinions, the reasons for testifying, as well as all of the other considerations that ordinarily apply when you are deciding whether or not to believe a witness's testimony.   You may give the opinion testimony whatever weight, if any, you find it deserves in light of all of the evidence in this case.   You should not, however, accept opinion testimony merely because I allowed the witness to testify concerning his or her opinion.   Nor should you substitute it for your own reason, judgment, and common sense. The determination of the facts in this case rests solely with you.

Authority

Charge of the Hon. Nicholas Garaufis in U.S. v. Pugh, 15-CR-116 (NGG)

33

<u>REQUEST NO. 13</u>

<u>Uncalled Witnesses Equally Available To Both Sides</u>

Both the government and the defense have the same power to (1) subpoena witnesses to testify on their behalf; or (2) depose witnesses located abroad, who would be otherwise unavailable to testify at a trial in the United States, for the purpose of using their recorded deposition testimony at trial.

If a potential witness could have been called to testify at trial, or deposed to testify abroad, by either the government or the defendant, and neither party called the witness, you should not draw any inferences or reach any conclusions as to what they would have testified to had they been called.   Their absence should not affect your judgment in any way.

<u>Authority</u>

Adapted from Sand, Form Instruction 6-7; <u>United States v. Rosa</u>, 11 F.3d 315, 342 (2d Cir. 1993).

## REQUEST NO. 14

### Failure To Charge A Defendant

You may not draw any inference, favorable or unfavorable, towards the government or the defendant on trial from the fact that certain persons were charged as defendants in this Indictment.   You should draw no inference from the fact that any other person is not present at this trial.   Your concern is solely the defendant on trial before you.

That other individuals are not on trial before you is not a matter of concern to you.   You should not speculate as to the reasons these individuals are not on trial before you. The fact that these individuals are not on trial before you should not control or influence your verdict with reference to the defendant who is on trial.

### Authority

Adapted from Sand, Form Instruction 3-4.

<u>REQUEST NO. 15</u>

<u>Use of Recordings and Transcripts</u>

During the course of the trial, you heard audio-taped foreign language recordings and you saw documents that contained foreign writings.   At times you heard from the recordings themselves, which had been translated for you, and you also heard from other witnesses that recounted some portions of documents and recordings that were presented in foreign languages.   For that reason, it was necessary to obtain translations of these materials into English.   The translations of those portions of the documents and recordings embody the testimony of interpreters.   As such, those portions of the material reflecting the foreign language-to-English translation have been admitted into evidence.

You may evaluate translator and interpreters as you do any other witness, and you may accept or reject the testimony of any interpreter or translator.   You may also accept or reject the accuracy of the transcript or translation itself.   If there is any discrepancy between the audio offered into evidence and any transcript or translation that was presented in written form, you should rely on the audio as the best evidence of the original speech.

<u>Authority</u>

Adapted from Sand, Form Instructions 5-9, 5-10, 5-11; <u>United States v. Ulerio</u>, 859 F.2d 1144, 1145 (2d Cir. 1988); <u>United States v. Vasquez</u>, 605 F.2d 1269, 1272 & n.4 (2d Cir. 1979); charge of the Hon. John Gleeson in <u>United States v. Betim Kaziu</u>, 09-CR-660 (S-1)(JG) (deposition testimony).

36

CONCLUSION

The government respectfully requests that the Court include the foregoing in its instructions to the jury.

Dated: Brooklyn, New York
      March 13, 2017

Respectfully submitted,

BRIDGET ROHDE
Acting United States Attorney
271 Cadman Plaza East
Brooklyn, New York 11201

By:         /SA/
      Shreve Ariail
      Melody Wells
      Matthew J. Jacobs
      Assistant United States Attorneys

      Joseph N. Kaster
      Trial Attorney
      U.S. Department of Justice