UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------- X

UNITED STATES OF AMERICA

- against -

·ADNAN IBRAHIM HARUN A HAUSA,
a.k.a. Spin Ghul
a.k.a. Esbin Gol
a.k.a. Isbungoul
a.k.a. Abu Tamim
a.k.a. Joseph Johnson
a.k.a. Mortala Mohamed Adam,

               Defendant.

---------------------------------------------------------- X

Filed with Classified
Information Security Officer

CISO _____

Date _____ 1/5/17

**MEMORANDUM DECISION
& ORDER**

12 Cr. 0134 (BMC)

**COGAN**, District Judge.

Before me is defendant Adnan Ibrahim Harun a Hausa's ("Harun") motion to suppress all statements he has made because they were directly or indirectly made absent proper warnings pursuant to Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602 (1966), and 18 U.S.C. § 3501, ██ ████████████████████████ Defendant specifically requests that the following statements be suppressed: ███████████████████████████ (2) his statements while in Italian custody; and (3) all other statements made subsequently. Defendant also seeks to suppress all evidence derived from those statements. Further, defendant seeks to dismiss the Indictment against him due to outrageous government misconduct, ████████████████████ ████████████████████████████ Defendant has requested an evidentiary hearing on these issues.

The Court assumes the parties' familiarity with the facts of Harun's odyssey to the United States and will only provide facts as necessary to the resolution of defendant's motion to

██████████████

suppress.  For the reasons stated below, an evidentiary hearing is unnecessary given the undisputed facts and applicable legal framework, and the Court is able to rule on the suppression motion based on the record presented.  For the following reasons, defendant's motion is denied.

## I.   An Evidentiary Hearing Is Unnecessary.

A defendant who is moving to suppress evidence is not automatically entitled to an evidentiary hearing.  United States v. Barrios, 210 F.3d 355, 2000 WL 419940, at *1 (2d Cir. 2000).  "[A]n evidentiary hearing on a motion to suppress ordinarily is required if the moving papers are sufficiently definite, detailed, and nonconjectural" to enable a court to conclude that there are contested issues of fact.  Jones v. United States, 365 F. App'x 309, 310 (2d Cir. 2010) (citing United States v. Pena, 961 F.2d 333, 339 (2d Cir. 1992)).  Put differently, "[a]bsent a contested issue of material fact, a defendant is not entitled to an evidentiary hearing."  United States v. Pierce, No. 06-CR-42, 2007 WL 1175071, at *3 (E.D.N.Y. Apr. 19, 2007).

Moreover, there are requirements as to what sort of evidence can create a factual dispute that would necessitate an evidentiary hearing on a motion to suppress.  It is well-settled that a hearing is not required if a defendant fails to support his factual allegations with an affidavit from a witness with personal knowledge.  See, e.g., United States v. Mottley, 130 F. App'x 508, 510 (2d Cir. 2005) (citing United States v. Gillette, 383 F.2d 843, 848 (2d Cir. 1967)); United States v. Walia, No. 14-CR-213, 2014 WL 2533848, at *1-2 (E.D.N.Y. June 5, 2014).

In the first instance, I find that there is no factual dispute as to what transpired from the time that Harun ██████████████████████ through the several rounds of questioning in Italy, until the present.  Neither party contests the sequence of events.  In fact, the parties agree that Harun was arrested ████████████████ after which he was interviewed in Italy several times, first by Italian officials alone and then in the presence of U.S. officials.

██████████████

███████████

███ the parties dispute the legal effect of the events in that timeline, making the question before me a legal one: What are the legal implications of Harun's interviews ████████████ under the operative legal frameworks governing constitutionally proper interrogations? More particularly, were Harun's statements subsequent to his imprisonment in Libya voluntarily given as a matter of law? A question of law merits no need for an evidentiary hearing, and, even though the parties do not explicitly request one, I also see no need for oral arguments on the legal issues given the robustness of both sets of briefing.

Defendant has proffered declarations from Dr. Jess Ghannam and Dr. Katherine Porterfield in support of his motion, and he argues that their declarations highlight the existence of a dispute as to the voluntariness of his statements in Italy. However, these declarations fail to create a factual dispute because they are not declarations of individuals with personal knowledge of the underlying facts. It is well-established that "[w]ithout a supporting affidavit of someone with personal knowledge of the underlying facts, the court need not resolve factual disputes that may be raised by the moving papers." United States v. Richardson, 837 F. Supp. 570, 572 (S.D.N.Y. 1993). Dr. Porterfield's declaration includes analysis of the effect ████████████ on Harun's ability to voluntarily answer questions in all subsequent interrogations or interviews. This analysis is based on her learned knowledge as a clinical psychologist ██████ ████████████████████████ Dr. Porterfield never spoke to Harun, ████████████████████████

Not that speaking to Harun bestows personal knowledge either, which is why Dr. Ghannam's declaration similarly fails to meet the requirements for an affidavit evincing personal knowledge. Though Dr. Ghannam spoke to Harun on two occasions, he learned what the parties already knew based on discovery, ████████████████████

███████

███████████

███████████████████████████████

███████████████████████████████████ Dr.

Ghannam's only substantively new averments are like those of Dr. Porterfield, i.e., analysis of those undisputed facts given his background in clinical psychology as they pertain to whether Harun voluntarily answered questions in Italy.

I find that the declarations fail to articulate a factual dispute that would merit an evidentiary hearing given the absence of personal knowledge in both declarations. Dr. Ghannam's and Dr. Porterfield's declarations are functionally the same as an attorney affidavit purporting to create a factual dispute even though the attorney has no personal knowledge of the underlying facts. Courts in this Circuit have uniformly rejected such attorney affidavits based on the absence of the attorney's personal knowledge, see, e.g., United States v. Perryman, 12 Cr. 0213, 2013 WL 4039374, at *6 (E.D.N.Y. Aug. 7, 2013); United States v. Mason, 06 Cr. 80, 2007 WL 541653, at *2 (S.D.N.Y. Feb. 16, 2007), and here, that same absence of personal knowledge dooms the instant psychology declarations. Accord United States v. Wilson, 493 F. Supp. 2d 364, 381 (E.D.N.Y. 2006) (rejecting the affidavit of an investigator, "who was not present at the scene of the arrest," because he had "no personal knowledge of the circumstances of the arrest" on a motion to suppress).

Notwithstanding defendant's failure to proffer affidavits based on personal knowledge regarding the voluntariness of Harun's statements, for the reasons set forth below, defendant's motion to suppress is also denied on the merits.

███████████████████

Generally, "statements taken by foreign police in the absence of Miranda warnings are admissible if voluntary." United States v. Yousef, 327 F.3d 56, 145 (2d Cir. 2003); see also

███████████

4

███████████

United States v. Welch, 455 F.2d 211, 213 (2d Cir. 1972); United States v. Bin Laden, 132 F. Supp. 2d 168, 182 n. 9 (S.D.N.Y. 2001). There are two particular exceptions to admissibility: (1) when the interrogation is the product of a "joint venture" between the United States and the foreign nation and (2) when the circumstances surrounding the interrogation shock the conscience. Yousef, 327 F.3d at 145-46.

First, the "joint venture" doctrine holds that "statements elicited during overseas interrogation by foreign police in the absence of Miranda warnings must be suppressed whenever United States law enforcement agents actively participate in questioning conducted by foreign authorities." Id. at 145. There is no bright-line test defining what it means to actively participate, but generally "mere presence at an interrogation" or indirect involvement of United States law enforcement agents will not give rise to a joint venture, whereas "coordination and direction of an investigation or interrogation does." United States v. Abu Ali, 528 F.3d 210, 229 (4th Cir. 2008).

The second exception applies where the statements were obtained under circumstances that "shock the judicial conscience." Yousef, 327 F.3d at 146. The types of circumstances that warrant the suppression of statements based on the second exception generally involve the use of torturous interrogative methods. See, e.g., United States v. Nagelberg, 434 F.2d 585, 588 n. 1 (1970). "In the criminal context, confessions or testimony procured by torture are excluded under the Due Process Clause because such admissions would run contrary to fundamental principles of liberty and justice which lie at the base of all our civil and political institutions." Mohammed v. Obama, 689 F. Supp. 2d 38, 61-62 (D.D.C. 2009) (internal quotation marks omitted).

███████████



### III.    Statements Made in Italian Custody

Defendant also moves to suppress statements he made while in Italian custody on the theory that the failure to <u>Mirandize</u> him ████████████████████████ ████████ render all subsequent statements contaminated, even where those statements came after a proper <u>Miranda</u> warning.  I reject these arguments.

#### A. *Defendant's* Seibert *Challenge*

Defendant cites <u>Missouri v. Seibert</u>, 542 U.S. 600, 124 S. Ct. 2601 (2004), for the plurality ruling that statements will be excluded if the Government engaged in a deliberate two-step process of taking a defendant's statement without a <u>Miranda</u> warning and then continuing the interrogation after the <u>Miranda</u> warning, thus depriving defendant of his rights, unless certain curative measures are taken or the connection between the interrogations is too attenuated.

████████████

Defendant's argument fails because the particular facts of his subsequent interrogations take his statements entirely outside of the protections afforded by Seibert and its progeny.

"The purpose of the Miranda warning is to ensure that the person in custody has sufficient knowledge of his . . . constitutional rights relating to the interrogation and that any waiver of such rights is knowing, intelligent, and voluntary." United States v. Carter, 489 F.3d 528, 534 (2d Cir. 2007). However, the United States cannot dictate the protections provided to criminal suspects by foreign nations, and as outlined *supra*, where a defendant makes voluntary statements to foreign law enforcement officers, without the benefit of some version of a Miranda warning, those statements are generally admissible. See Yousef, 327 F.3d at 145.

In assessing whether a later-Mirandized interview is tainted by a deliberate two-step process, courts look to the "totality of the objective and subjective evidence surrounding the interrogations." United States v. Moore, 670 F.3d 222, 229 (2d Cir. 2012) (internal quotation marks omitted). The Second Circuit held that the five Seibert factors serve as "helpful indicia for whether an alleged two-step interrogation was intended to circumvent Miranda." Id. at 230. These give factors are "[1] the completeness and detail of the questions and answers in the first round of interrogation, [2] the overlapping content of the two statements, [3] the timing and setting of the first and the second, [4] the continuity of police personnel, and [5] the degree to which the interrogator's questions treated the second round as continuous with the first." Seibert, 542 U.S. at 615, 124 S. Ct. at 2612. Further, "the prosecution bears the burden of disproving by a preponderance of the evidence that the government employed a deliberate two-step strategy to deprive the defendant of the protections afforded by the Fifth Amendment." Moore, 670 F.3d at 229.

████████████

███████████

I find that there was no deliberate attempt to engage in a two-step interrogation to deprive Harun of his Miranda rights. The facts surrounding Harun's interviews in Italian custody are so far removed from any deliberate two-step interrogation that Seibert simply does not apply here. All parties are in agreement that Harun was arrested in Libya in January 2005 and remained incarcerated there until June 2011, when, without reason, Harun was freed from prison and found himself on a refugee ship bound for Italy. An officer onboard the ship observed Harun pacing and demanding water, and when the officer approached Harun, Harun told the officer in English that he was "different." The officer observed scars on Harun's arm and, on informing the head of security of the scars, was directed to move Harun into a private room. Facilitated by an Arabic-speaking cultural officer, the head of security asked Harun several questions, during which time Harun stated that he was a member of al Qaeda.

The head of security asked Harun to make a written statement, and Harun complied, providing a written statement in Arabic. This statement, for which an English translation was provided, includes, in relevant part, an admission by Harun that he is a member of al Qaeda in the West African countries. Harun then asked to get off the ship, and when he was advised that the ship was in the middle of the sea and would not stop until it reached Taranto, Italy, Harun threatened to jump overboard. He further became violent when officers tried to restrain him. He was ultimately restrained, sedated, and given over to Italian officials in Taranto the following day.

On that following day, he was interviewed by Italian officials, during which time Harun was provided defense counsel. The interviewers advised him that they sought to question him about his statements aboard the ship regarding his membership in al Qaeda, and Harun indicated that he would like to respond. During the interview, he described, among other things, his

███████████

8

███████████████

membership in al Qaeda, his involvement in attacks on U.S. military personnel in Afghanistan, and his disrupted plans to attack the U.S. Embassy in Nigeria.

Two days later, Harun, represented by an Italian attorney, appeared in Italian court regarding the statements he had made. He was advised of his Italian rights, which included a notification that he had the right not to respond to questions, and Harun represented that he wished to respond. Harun recounted his interactions with Italian law enforcement thus far and repeated the inculpatory statements he made regarding al Qaeda. The Italian court then placed Harun in custody.

When the Italian officials attempted to interview Harun again the following month in July 2011, he refused to answer any questions unless a Hausa translator was used. A month later in August 2011, Harun was interviewed by Italian officials with the assistance of a Hausa interpreter, during which time he again made inculpatory statements. For all of these interviews, detailed summaries, or *verbales*, were written in Italian and translated into English. ██████████

████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████

Harun was interviewed again the following month in September 2011, during which representatives from the U.S. Attorney's Office in this District and the FBI were present. Harun was properly Mirandized given that the American officials actively participated in the interview. Harun again made many inculpatory statements. The crux of defendant's motion to suppress focuses on applying the Seibert factors to these interviews; however, to do that is to ask me to

---

[1] Given the recitation of Italian rights at the court hearing in June 2011, including the right to remain silent, and statements to Italian officials by Harun both before and after that recitation, there appears to be a technical pre- and post-warning situation. However, it is one that exists outside the realm of American law, and as has been stated *supra*, the United States cannot dictate the protections provided to criminal suspects by foreign nations – and they certainly cannot dictate those protections when they have no involvement.

███████████████

9



contort the timeline of events and turn a blind eye to the series of purely Italian interviews ▬ ▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬ and at step two are the post-<u>Miranda</u> statements in Italy made in the presence of U.S. officials in late 2011.

Defendant's argument fabricates a <u>Seibert</u> issue where there is none.  It is unclear how defendant can claim the Government took part in any <u>Seibert</u> two-part interrogation when they were not involved in the Italian interrogations between June and August 2011, which not only break any "continuum" between ▬▬▬▬ and September 2011, but also, along with the September 2011 interviews, occupy a space so starkly different ▬▬▬▬▬▬▬ as to fail the <u>Seibert</u> analysis completely.  There simply can be no deliberate two-step interrogation ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ the United States took part in interviews in Italy after it was notified that Harun had been taken into Italian custody.  In between those two events were Harun (1)▬▬▬▬▬▬ (2) being placed on a refugee ship, (3) drawing the attention of the Italians aboard the ship, (3) volunteering to the Italians that he is in al Qaeda, and (5) sitting for four interviews, five if one considers the interview when Harun refused to participate unless a Hausa interpreter was provided.

Even referencing the five <u>Seibert</u> indicia of a violative two-step interrogation, it is clear <u>Seibert</u> is inapplicable:  The locations were different, the events were years apart, the personnel involved did not overlap, and there was a total lack of continuity between the two sets of interviews.  While certainly, "[t]he use of coercive and improper tactics in obtaining an initial confession may warrant a presumption of compulsion as to a second one, even if the latter was

███████████████

obtained after properly administered <u>Miranda</u> warnings," <u>United States v. Taylor</u>, 745 F.3d 15, 25 (2d Cir. 2014) (internal quotation marks omitted), we are not talking about a "first" interview and a "second" interview. We are talking about the first interview and the seventh interview, with interviews two through six being the strictly Italian interviews. Even if I were to look at the first and seventh interviews like they were the first and second, the factors that the Second Circuit has opined may bear on whether the taint from the first interrogation carried over into the second, namely "[1] the time that passes between confessions, [2] the change in place of interrogations, and [3] the change in identity of interrogators," <u>Taylor</u>, 745 F.3d at 25-26 (internal quotation marks omitted), do not suggest taint in any way.

Defendant relies on <u>United States v. Pritchette</u>, No. 16CR331, 2016 WL 6610201 (S.D.N.Y. Nov. 8, 2016), to support his position that a <u>Seibert</u> violation occurred, but the facts of <u>Pritchette</u>, and indeed all of the cases cited that find a <u>Seibert</u> violation, are so different that they are not remotely comparable. Accordingly, I find that there was no <u>Seibert</u> violation, and I deny defendant's motion to suppress.

███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████

██████████████







## C. *Defendant's* Mirandized *Statements*

Notwithstanding defendant's independent awareness and knowledge of his Miranda rights, defendant was properly Mirandized and made a knowing waiver of those rights when he was interviewed by U.S. officials in Italy. "To prove a valid waiver, the government must show (1) that the relinquishment of the defendant's rights was voluntary, and (2) that the defendant had a full awareness of the right being waived and of the consequences of waiving that right." United States v. Male Juvenile (95-CR-1074), 121 F.3d 34, 39-40 (2d Cir. 1997) (quoting United States v. Jaswal, 47 F.3d 539, 542 (2d Cir. 1995)). The Government must show that a waiver · was knowing and voluntary "by a preponderance of the evidence." United States v. Lynch, 92 F.3d 62, 65 (2d Cir. 1996). Only if the totality of the circumstances "reveal[s] both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived." Moran v. Burbine, 475 U.S. 412, 421, 106 S. Ct. 1135, 1141 (1986).

Whether a statement has been coerced is determined by evaluating the "totality of all the surrounding circumstances, including the accused's characteristics, the conditions of interrogation, and the conduct of law enforcement officials." United States v. Anderson, 929 F.2d 96, 99 (2d Cir. 1991). "No single criterion controls whether an accused's confession is

██████████████████

voluntary: whether a confession was obtained by coercion is determined only after careful evaluation of the totality of the surrounding circumstances." United States v. Orlandez-Gamboa, 320 F.3d 328, 332 (2d Cir. 2003) (internal quotation marks omitted).

Here, the record is clear, based on the transcript of those Mirandized interviews, that Harun received a proper warning, that he was fully apprised of his Miranda rights (and verily, that he knew them previously), that he waived those rights, that he understood the rights he was waiving, and that he voluntarily chose to answer questions. Even embracing the totality-of-the-circumstances analysis of Harun's characteristics and the conditions of the interviews demonstrates that Harun, approximately 40 years old in 2011, was intelligently answering questions posed to him in a normal setting – ███████████████████████

███████████████████████████████████████████

███████████████ Thus, having found that defendant knowingly waived his Miranda rights, ████

███████████████████████████████ and that there was no impermissible Seibert interrogation, defendant's motion to suppress all statements is denied.

**IV.    Evidence Derived from the Statements** ██████████

Defendant argues that all evidence that came about as a result of his statements ██████ should be suppressed. Defendant is correct that, generally, "the fruit of the poisonous tree doctrine requires the exclusion of the fruits of illegally obtained evidence unless, . . . granting establishment of the primary illegality, the evidence . . . has been come at . . . instead by means sufficiently distinguishable to be purged of the primary taint." United States v. Ghailani, 743 F. Supp. 2d 242, 250 (S.D.N.Y. 2010) (internal quotation marks omitted). Although correct on the law, defendant has not identified any poisonous fruit. His argument appears predominantly to be another attempt to argue that the statements subsequent ██████ are fruit from the poisonous tree

████████████████

15



████████ but as the facts outlined above demonstrate, interviews two through six, and the statements made therein, were not based on any knowledge ████████ Italian officials did not know ████████ except what Harun told them, and all of those statements are free-standing and untethered to any taint.

## V.   Defendant's Motion to Dismiss the Indictment

Finally, defendant moves this Court in the alternative to dismiss the Indictment against him, arguing that the Government's conduct ████████████ is so outrageous a violation of his Fifth Amendment rights that the Indictment should be dismissed. This argument fails. The Fifth Amendment, in relevant part, protects against deprivations of liberty absent due process of law and guarantees a defendant's right to present a complete defense. For a due process violation to result in the dismissal of an indictment or even the suppression of evidence, there must be a causal connection between the violation and the alleged deprivation the defendant claims. See, e.g., United States v. Ghailani, 751 F. Supp. 2d 502, 505 (S.D.N.Y. 2010). Here, there is no such causal connection.

██████████████

In the first instance, ██████████████████████ Although defendant dismisses the Government's representations ██████████████████████████

████████████████████████████████████████

████████████ defendant offers nothing to dispute those representations outside of vague allegations and conjecture.

Second, just as occurred in <u>Ghailani</u>, the Government has stated that it will not use any of ████████████████████████ therefore, "any deprivation of liberty that [Harun] might suffer as a result of a conviction in this case would be entirely unconnected to the alleged due process violation," because even if the United States ██████████████████████

████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████

Further, defendant's argument that ██████████████ has interfered with his right to a fair trial has only superficially created a causal connection between the alleged outrageous conduct and a due process violation, and that superficial connection nonetheless fails. Defendant argues that he has been denied the right to a fair trial based on ██████████████████ ██████████ an argument premised on defendant's refusal to cooperate with his counsel and assist in his defense. However, that argument neglects the fact that defendant decided to cease

██████████████

17

███████████████

cooperating with his counsel after several proffer sessions, during which he was both represented by the same counsel and cooperating with his counsel. Harun stopped cooperating with his counsel ███████████████████████ because, as even defendant's expert Dr. Ghannam has opined, he believes his counsel to be in collusion with the Government. Whatever the motivation behind that conviction, it is apparent that Harun's decision to not assist in his defense is willful, voluntary, and the product of his misguided beliefs regarding the loyalties of his counsel, who have provided and continue to provide nothing but a tenacious defense on his behalf.

Accordingly, defendant's motion to dismiss the Indictment on the grounds of allegedly outrageous government conduct in violation of his Fifth Amendment due process rights is denied.

## CONCLUSION

For the foregoing reasons, defendant's motion to suppress is denied.

SO ORDERED.

_s/BMC_

_____
U.S.D.J.

Dated: Brooklyn, New York
          January 25, 2017